## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 04-30002-MAP |
| | ) | |
| vs. | ) | VIOLATIONS: |
| | ) | |
| PAUL CALCASOLA, and | ) | 18 U.S.C. §§ 371 and 1344 |
| ELISABEL RIVAS, | ) | - Conspiracy to Commit Bank |
| | ) | Fraud (Count One) |
| _____ Defendants. | ) | |

18 U.S.C. § 1344 - Bank Fraud
(Count Two)

18 U.S.C. § 1014 - False
Statement on Loan Application
(Count Three)

18 U.S.C. § 1503 - Obstruction
of Justice (Count Four)

18 U.S.C. § 2 - Aiding and
Abetting (Counts One through
Three)

The Grand Jury charges:

## INDICTMENT

**COUNT ONE:**    Title 18, United States Code, Sections 371 and 1344
                  - Conspiracy to Commit Bank Fraud

### Introduction

### Entities and Parties Involved

At all times relevant to this Indictment:

1.    Fleet Mortgage Company was a subsidiary of Fleet Bank,
a depository institution insured by the Federal Deposit Insurance
Corporation.

1

2.    Springfield Neighborhood Housing Services, Inc. (hereinafter "SNHS"), was a non-profit organization that assisted first time homebuyers.  SNHS was affiliated with Neighborhood Housing Services of America (hereinafter "NHSA"), a national housing program that used Fleet Mortgage Company to originate and underwrite loans and then purchased those loans from Fleet Mortgage Company.

3.    Paul Calcasola (hereinafter referred to as "Calcasola") formerly worked as an employee for the City of Springfield at Massachusetts Career Development Institute.  Calcasola resides at 19 Rutledge Avenue, Springfield, MA.

4.    Elisabel Rivas (hereinafter referred to as "Rivas") resides with Calcasola at 19 Rutledge Avenue, Springfield, MA.  Title to 19 Rutledge Avenue is in the name of Rivas.

### The Conspiracy

5.    From at least June, 1998, the exact beginning date being unknown to the Grand Jury, and continuing thereafter through at least March, 1999, in the District of Massachusetts,

**PAUL CALCASOLA**
**and**
**ELISABEL RIVAS,**

defendants herein, did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other and other persons both known and unknown to the Grand Jury to commit

2

an offense against the United States, that is, to knowingly make a false statement upon a loan application to a federally insured financial institution, and, having knowingly and willfully devised and intended to devise a scheme and artifice to defraud by means of false and fraudulent pretenses, representations, and promises, and material omissions, did execute and attempt to execute said scheme and artifice to defraud in order to obtain money owned by and under the custody and control of a federally insured financial institution in violation of Title 18, United States Code, Sections 1014 and 1344.

## The Objects of the Conspiracy

The objects of the conspiracy were:

6.    to fraudulently obtain money from Fleet Mortgage Company and Fleet Bank by means of false and fraudulent pretenses, representations, and promises and material omissions contained in, among other things, employment verification forms, employment documents, wage documents, tax documents, and loan applications.

## The Means and Methods of the Conspiracy

7.    Calcasola and Rivas caused false employment verification forms to be submitted to Fleet Mortgage Company and SNHS to make it appear as if Rivas worked for a Springfield-based business when in truth and in fact Rivas did not work for this business.    To insure that Rivas qualified for a loan from Fleet Mortgage Company, Calcasola and Rivas submitted false wage

3

information and false tax information to SNHS and Fleet Mortgage
Company.  Finally, Rivas signed a false loan application and false
real estate closing documents to secure the loan from Fleet
Mortgage Company.

### Overt Acts in Furtherance of the Conspiracy

As a part of and in furtherance of the above-described
conspiracy and to accomplish the objects and purposes thereof,
defendants herein and their co-conspirators did commit and cause
to be committed the following overt acts:

8.    In or about June, 1998, Calcasola approached the owner
of a Springfield-based business and asked the business owner to
agree to falsely claim that Rivas worked for the business so that
he and Rivas could qualify for a loan and purchase a home at 19
Rutledge Avenue, Springfield, MA.

9.    In or about June, 1998, Rivas went to SNHS and falsely
claimed that she worked at a Springfield-based business and earned
approximately $35,000.00 per year.

10.   On or about June 29, 1998, pursuant to the agreement
with Calcasola, the business owner signed a "Request for
Employment Verification" form, which stated that Rivas had been
working at the business since November, 1994 and earned
approximately $33,800.00 per year, and returned the form to SNHS.

11.   On August 24, 1998, Calcasola completed a "Request for
Verification of Rent" form, on which Calcasola falsely stated that

4

Rivas resided at 123 Wachusett Street, Springfield, MA, had been renting from him since October 1st, 1995, had been paying $400.00 per month, and had never made a late payment, and then returned the form to SNHS.

12. In or about July, 1998, Calcasola approached the business owner and explained that he needed several business checks made payable to Rivas in order to support Rivas' claim that she worked for the business owner.

13. In or about July, 1998, Calcasola accepted several business checks, which had been made payable to Rivas in the amount of $485.54, from the business owner and made photocopies of the checks.

14. In or about July, 1998, Rivas submitted the copies of the fraudulent business checks to SNHS in order to support her false statements that she worked for the Springfield-based business and received weekly wages from the business.

15. In or about July, 1998, Rivas submitted false W-2s for the years 1995, 1996 and 1997 to SNHS as further support for her false statements that she worked for the Springfield-based business and earned approximately $35,000.00 per year.

16. On or about September 28, 1998, after SNHS noticed a discrepancy in Rivas' wage figures, Calcasola and Rivas caused the submission of a letter to SNHS that falsely explained the discrepancy in Rivas' wage figures by stating that some wage

documents neglected to include Rivas' monthly and quarterly bonuses.

17.  On or about October 1st, 1998, pursuant to the agreement with Calcasola, the business owner signed a second "Request for Employment Verification" form, on which the business owner re-certified that Rivas had been working at the business for several years and earning approximately $35,000.00 per year, and returned the form to SNHS.

18.  On October 25th, 1998, Rivas applied for a $2,600.00 mixed grant/loan from the Office of Housing, City of Springfield, in order to finance the down payment on the purchase of 19 Rutledge Avenue, Springfield, MA.

19.  On or about October 25th, 1998, Rivas falsely stated in her Office of Housing application that she had worked for a Springfield-based business since November, 1994, and grossed approximately $37,000.00 per year.

20.  On or about October 25th, 1998, Rivas submitted false W-2s for the years 1995 through 1997 and cancelled paychecks to support the fraudulent income figures on her application, all of which caused the City of Springfield to grant Rivas $2,600.00 for the down payment on her purchase of 19 Rutledge Avenue, Springfield, MA.

21.  On or about October 26th, 1998, Rivas signed a loan application that falsely stated that Rivas had worked at the

6

local, Springfield-based business for three years, and that her gross income was $3,065.00 per month.

All in violation of Title 18, United States Code, Sections 371, 1014 and 1344.

**COUNT TWO:** **Title 18, United States Code, Sections 1344 and 2 -
Bank Fraud and Aiding and Abetting**

22.    The United States re-alleges and incorporates by
reference the allegations set forth in paragraphs 1 through 21.

23.    Between on or about June, 1998 and March, 1999, in the
District of Massachusetts and elsewhere,

**PAUL CALCASOLA**
**and**
**ELISABEL RIVAS,**

defendants herein, having devised the above-described scheme and
artifice to defraud, did execute and attempt to execute the scheme
and artifice to defraud by obtaining money from Fleet Mortgage
Company, a subsidiary owned by and under the control and custody
of Fleet Bank, a financial institution federally insured by the
Federal Deposit Insurance Corporation, by means of false
pretenses, representations, and promises by submitting and causing
the submission of, among other things, false employment
verification forms, false employment documents, false wage
documents, false tax documents, and false loan applications.

All in violation of Title 18, United States Code, Section
1344, and Title 18, United States Code, Section 2.

**COUNT THREE:**    **Title 18, United States Code, Sections 1014 and 2 -**
                    **False Loan Application and Aiding and Abetting**

24.  On or about October 26th, 1998, in the District of
Massachusetts and elsewhere,

**PAUL  CALCASOLA**
**and**
**ELISABEL RIVAS,**

defendants herein, knowingly made a material false statement to
Fleet Mortgage Company, a subsidiary of Fleet Bank, a financial
institution federally insured by the Federal Deposit Insurance
Corporation, for the purpose of influencing the action of Fleet
Mortgage Company, in connection with a loan application in that
Rivas falsely stated that she worked as a salesperson at a jewelry
store, and that she received base employment income of $3,004.00
per month, when in truth and in fact, as the defendant well knew,
she never worked as a salesperson for a jewelry store and did not
receive base employment income of $3,004.00 per month.

All in violation of Title 18, United States Code, Section
1014, and Title 18, United States Code, Section 2.

**COUNT FOUR:**    **Title 18, United States Code, Sections 1503 and 2 –**
                    **Obstruction of Justice**

25. In or about February, 2002, within the District of
Massachusetts,

**PAUL CALCASOLA,**

defendant herein, did corruptly obstruct and impede, and endeavor
to obstruct and impede, the due administration of justice by
encouraging a potential grand jury witness to tell federal
investigators that Elisabel Rivas had worked for the witness'
business, and that the witness had employed Elisabel Rivas under
the table.

All in violation of Title 18, United States Code, Section
1503.

10

## 18 U.S.C. § 982 - Criminal Forfeiture

1.    Counts One, Two and Three of the Indictment are hereby realleged and incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

As a result of the offenses alleged in Counts One, Two and Three,

**PAUL CALCASOLA**
**and**
**ELISABEL RIVAS,**

defendants herein, shall forfeit any property, real or personal, involved in such offenses, or any property traceable to such property, including, but not limited to:

> A.    real property and buildings located at 19 Rutledge Avenue, Springfield, MA.

2. If any of the forfeitable property described in paragraph 1 above, as a result of any act or omission of the defendants --

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which

11

cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. §

982 and 21 U.S.C. § 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property

described in subparagraphs (a) through (e) of this paragraph.

All in violation of Title 18, United States Code, Section

982.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


_____
Assistant United States Attorney


DISTRICT OF MASSACHUSETTS: _____January 22_____, 2004

Returned into the District Court by the Grand Jurors and filed at 2:11 PM

_____
DEPUTY CLERK OF THE COURT

13